UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
HENRY ROLAND FLORES LOPEZ,

                    Plaintiff,

    -against-

MVN REALTY, LLC, and JAMES DIMITRIADES,
individually,

                   Defendants.
-----------------------------------------------------------------------X

**COMPLAINT**

**Docket No.:**

**Jury Trial Demanded**

      HENRY ROLAND FLORES LOPEZ ("Plaintiff"), by and through his attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against MVN REALTY, LLC ("MVN"), and JAMES DIMITRIADES, individually, (together as "Defendants"), alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

      1.     This is a civil action for damages and other redress based upon willful violations that Defendants committed of Plaintiff's rights guaranteed to him by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the New York Labor Law's ("NYLL") requirement that employers furnish employees with a wage statement containing specific categories of accurate information on each payday, NYLL § 195(3); (iii) the NYLL's requirement that employers furnish employees with a wage notice containing specific categories of accurate information at hire, NYLL § 195(1); (iv) the anti-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3); and (v) any other claim(s) that can be inferred from the facts set forth herein.

      2.     Plaintiff worked for Defendants - - a New York limited liability company that owns and manages various residential apartment buildings, and one of its owners and day-to-day

overseers - - at the approximately eighty-nine-unit residential building located at 1901 84th Street, Brooklyn, New York 11214 ("the Building"), as the Building's superintendent, from June 2018 through September 19, 2022. As described below, throughout Plaintiff's employment, but as is relevant to the FLSA, for the three-year period pre-dating the commencement of this action ("the relevant FLSA Period"), Defendants willfully failed to pay Plaintiff the overtime wages lawfully due to him under the FLSA. Specifically, throughout the relevant FLSA Period, Defendants routinely scheduled Plaintiff to work, and Plaintiff did work, beyond forty hours in a workweek, and also required Plaintiff to work additional unscheduled hours, yet Defendants paid Plaintiff a flat weekly salary that did not include overtime compensation at the rate of one and one-half times his regular rate for any hours that Plaintiff worked over forty in a week.

3. Additionally, Defendants violated the NYLL by, throughout his employment, failing to furnish Plaintiff with any wage statement on each payday, let alone an accurate one, and by failing to furnish Plaintiff with any wage notice at the time of his hire, let alone an accurate one.

4. Making matters worse, in further violation of the FLSA, after Plaintiff complained to Defendants about their failure to pay him for all of the hours that he worked each week, Defendants retaliated by terminating Plaintiff's employment.

**JURISDICTION AND VENUE**

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

**PARTIES**

7. At all relevant times herein, Plaintiff was and is a resident of Kings County, New York, and was an "employee" entitled to protection as defined by the FLSA and the NYLL, as he worked for Defendants in New York.

8. At all relevant times herein, Defendant MVN was and is a limited liability company duly organized and existing under the laws of New York, with its principal place of business located at 1901 84th Street, Brooklyn, New York 11214, and which is registered with the New York State Department of State to receive service of process at Post Office Box 423, Brooklyn, New York 11209.

9. At all relevant times herein, Defendant Dimitriades was and is an owner and day-to-day overseer of Defendant MVN, who in that role personally managed and oversaw, and continues to manage and oversee, the day-to-day operations of the business, and who was and is ultimately responsible for all matters with respect to hiring and firing employees, determining employees' rates, methods of pay, work schedules, and at which location employees would work, and for maintaining employees' employment records, including those matters with respect to Plaintiff.

10. At all relevant times herein, Defendants were and are "employers" within the meaning of the FLSA and the NYLL. Additionally, throughout the relevant FLSA Period, Defendant MVN's qualifying annual business exceeded $500,000.00. Furthermore, Defendants were engaged in interstate commerce within the meaning of the FLSA, as they employed two or

more employees, and operated their business using numerous products, such as light bulbs, cleaning products, tools, and appliances, which originated in states other than New York. Defendants also accepted payments in cash that naturally moved across state lines. The combination of these factors subjects Defendants to the FLSA's overtime requirements as an enterprise with respect to all of Defendants' employees.

## BACKGROUND FACTS

11. Defendant MVN is a New York limited liability company that owns and operates numerous residential apartment buildings in the New York City area, including, but not limited to, the Building.

12. Defendant Dimitriades, as detailed above, is an owner and day-to-day overseer of MVN, who oversees the daily operation of MVN, and who controls the terms and conditions of employment for all of its employees. To that end, Dimitriades personally hired Plaintiff, set Plaintiff's rate of pay, determined Plaintiff's weekly schedule and responsibilities, supervised his work, should have maintained Plaintiff's employment records, and terminated Plaintiff's employment.

13. Defendants employed Plaintiff as a non-managerial superintendent at the Building, which has eighty-nine units, from June 2018 through September 19, 2022.

14. In this role, Plaintiff's primary job duties consisted of cleaning in and around the Building, performing maintenance on the Building's appliances and utilities, fixing leaks, taking out the garbage, and tending to the needs of residents.

15. Throughout Plaintiff's employment, Defendants scheduled Plaintiff to work, and Plaintiff did work, seven days per week, from approximately 6:00 a.m. to 5:00 p.m., usually with

4

a thirty-minute break during each shift, for a total of at least seventy-three and one-half hours of scheduled work each week.

16. Moreover, outside of his scheduled hours, Defendants also required Plaintiff to be on call and available to work during every hour of every day of the week. Indeed, Defendants' tenants often submitted work requests to Defendants' management, who then called Plaintiff and required him to work during unscheduled hours, at all times of the day and night, to attend to the tenants' concerns and emergency maintenance issues that required immediate attention. When that occurred, Defendants required Plaintiff to respond to these issues within minutes of receiving the call.

17. Indeed, Defendants never advised Plaintiff that he was relieved from duty for a certain period of time, and never provided Plaintiff with a period of time during which Plaintiff could engage in purely personal or private pursuits without the threat of being interrupted or called back to work by Defendants.

18. On average, during the winter months, Plaintiff performed an average of approximately twenty hours of unscheduled work in a week, and during the non-winter months, he performed an average of approximately seven hours of unscheduled work in a week.

19. Throughout his employment, Defendants paid Plaintiff a flat weekly salary of $650.00 regardless of how many hours Plaintiff worked in a week, which did not include overtime compensation for the hours that Plaintiff worked in a week over forty.

20. By way of example only, for the week of July 17 through July 23, 2022, Defendants required Plaintiff to work, and Plaintiff did work, his normal schedule of 6:00 a.m. to 5:00 p.m. with a thirty-minute break during each day, for a total of seventy-three and one-half hours. In

exchange, Defendants paid Plaintiff his weekly salary of $650.00, and thus did not pay him overtime compensation for the thirty-three and one-half hours that he worked over forty that week.

21. Throughout Plaintiff's employment, Defendants paid Plaintiff in cash on a weekly basis.

22. On each occasion when Defendants paid Plaintiff, Defendants failed to provide Plaintiff with any wage statement, let alone one that listed, *inter alia*, his regular and overtime rates of pay and his total hours worked in a week.

23. Additionally, Defendants did not provide Plaintiff with any wage notice at his time of hire, let alone one that accurately contained, *inter alia*: any allowances claimed; the name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office or principal place of business, and a mailing address if different; and Defendants' telephone number.

24. Defendants' disclosure failures deprived Plaintiff of the ability to know, in a timely manner, exactly how much compensation he was entitled to and/or who the legal entity or entities to sue for this compensation would be, and resulted in the underpayment of wages as asserted herein, as well as any loss from not receiving all of his wages owed when due.

25. Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs and overhead.

26. Each hour that Plaintiff worked was for Defendants' benefit.

27. Defendants willfully disregarded and purposefully evaded the FLSA's recordkeeping requirements by failing to maintain proper and complete records of the hours that Plaintiff worked, so as to avoid paying him overtime compensation for his hours worked over forty in a week.

28. As a result of Defendants' willful failure to pay him overtime as the law required, in mid-August 2022, Plaintiff complained to Defendant Dimitriades about Defendants not properly compensating him for the number of hours that he worked each week, and in response, Dimitriades told Plaintiff that Defendants cannot pay him any more money, and then fired Plaintiff during the very next month, on September 19, 2022.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the FLSA*

29. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

30. 29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

31. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff was an employee within the meaning of the FLSA.

32. As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate him in accordance with the FLSA's overtime provisions.

33. Defendants willfully violated the FLSA.

34. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his regular rates of pay.

35. Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Accurate Wage Statements in Violation of the NYLL*

36. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

37. NYLL § 195(3) requires that employers furnish employees with a wage statement containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

38. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff was an employee within the meaning of the NYLL.

39. As also described above, Defendants, on each payday, failed to furnish Plaintiff with a wage statement that accurately contained all of the criteria that the NYLL requires.

40. Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff in the amount of $250.00 for each workday that each violation occurred, up to a statutory cap of $5,000.00.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish an Accurate Wage Notice in Violation of the NYLL*

41. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42. NYLL § 195(1) requires that employers provide employees with a wage notice containing accurate, specifically enumerated criteria at the time of hire.

43. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff was an employee within the meaning of the NYLL.

44. As also described above, Defendants failed to furnish Plaintiff with a wage notice at his time of hire that accurately contained all of the criteria that the NYLL requires.

45. Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff in the amount of $50.00 for each workday after the violation initially occurred, up to a statutory cap of $5,000.00.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Retaliation in Violation of the FLSA*

46. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47. 29 U.S.C. § 215(a)(3) prohibits employers from discharging or in any other manner discriminating against an employee because such employee has filed any complaint relating to an employer's violation of the FLSA.

48. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff was an employee within the meaning of the FLSA.

49. As also described above, after Plaintiff engaged in activity protected under the FLSA, Defendants retaliated by terminating Plaintiff's employment.

50. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm, for which he is entitled to an award of monetary damages and other relief.

51. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

52. Plaintiff is entitled to punitive damages, liquidated damages, interest, and attorneys' fees for Defendants' violation of the FLSA's anti-retaliation provisions.

## **DEMAND FOR A JURY TRIAL**

53. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b. An order restraining Defendants from any retaliation against Plaintiff for participation in any form of this litigation;

c. Awarding all damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

d. Granting liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

e. Awarding Plaintiff his reasonable attorneys' fees, as well as his costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

f. Granting an award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with his retaliation claim, whether legal or equitable in nature, including back pay, reinstatement or front pay, and any other damages for lost compensation or employee benefits that he would have received but for the Defendants' unlawful conduct, to the extent recoverable by law;

  g. Granting an award of damages to be determined at trial to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment in connection with his retaliation claim;

  h. Granting an award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish as provided by law in connection with his retaliation claim;

  i. Granting an award of punitive damages to Plaintiff commensurate with Defendants' ability to pay and as provided by law, in connection with his retaliation claim;

  j. Awarding pre-judgment and post-judgment interest, as provided by law; and

  k. Granting Plaintiff any further relief as this Court finds necessary and proper.

Dated: Garden City, New York
   March 10, 2023

                Respectfully submitted,

                BORRELLI & ASSOCIATES, P.L.L.C.
                *Attorneys for Plaintiff*
                910 Franklin Avenue, Suite 200
                Garden City, New York 11530
                Tel. (516) 248-5550
                Fax. (516) 248-6027

By: _____
    ANDREW C. WEISS (5560537)
    ALEXANDER T. COLEMAN (AC 8151)
    MICHAEL J. BORRELLI (MB 8533)